**PORTER, Plaintiff, v. RAILWAY EXPRESS AGENCY INC., Defendant.**

Common Pleas Court, Allen County.

No. 42147.

376

Durbin, Navarre & Rizor, Lima, for plaintiff.
Otis T. Lippincott, John R. Evans, Lima, for defendant.

(McNEILL, J, of Van Wert County, sitting by assignment.)

## OPINION

By McNEILL. J.

This cause came on for hearing on the 2nd day of October, 1957, upon defendant's motion for new trial. Plaintiff, via defendant, shipped thirteen chinchillas from Lima, Ohio, to San Angelo, Texas. Between St. Louis, Missouri and Kansas City, Missouri, the temperature became extremely hot, and three chinchillas died. The remaining chinchillas were taken off the car at Kansas City and taken to a veterinarian, who kept them in an air conditioned room, returned them to defendant, and defendant then trans-shipped them with several large cakes of ice between the crates. The evidence indicates that the chinchillas were in good condition when the car personnel changed at Wichita Falls and Altus, Oklahoma. The evidence further discloses that somewhere between Altus, Oklahoma and Sweetwater, Texas, the chinchillas began to suffer and that seven more died. There is no testimony that new ice was furnished at either of the two stops, but the evidence is to the contrary.

These chinchillas were sold under contract and there is evidence as to the price per pair that made up the contract price. However, there is no evidence as to which animals survived, and the jury was instructed that they must presume that the most valuable animals survived. The jury returned a verdict in the amount of $4335.00. The chinchillas were

shipped under a declared value of $5,000.00. The shipper's receipt showing the rate or scale per item shipped was left blank. Only the total valuation was entered.

Defendant objects to the fact that the court shifted the burden of going forward upon defendant after plaintiff showed that the animals were delivered to the defendant in good condition and that seven were dead upon arrival.

"A prima facie case of liability is made against a terminal carrier where evidence is offered that a shipment of livestock, * * * was received in good condition by the initial carrier and was delivered in an injured or damaged condition at the destination by the terminal carrier."

"To rebut such prima facie case it is incumbent on the terminal carrier to produce evidence that the injury or damage was not the result of negligence or a breach of contractual duty in connection with the carriage, or that such injury or damage was due to the inherent vice, weakness or natural propensities of the livestock * * *" Grosjean v. The Pennsylvania Road Co., 146 Oh St 643.

In attempting to counter-balance the prima facie case, defendant showed that the natural propensity of chinchillas is to reach a state of exhaustion rapidly in extremely high temperatures, which causes their death, and such extreme temperatures did exist due to natural elements. However in attempting to counter balance the presumption, defendant showed that at Kansas City the chinchillas were taken to a veterinarian of their choosing, were placed in an air-conditioned place, and upon being returned for shipment, were shipped with several cakes of ice around their crates. The chinchillas went through two messengers in good shape from Kansas City to Altus, Oklahoma. The plain inference from the evidence is that the ice was not renewed. The chinchillas again began to suffer and the messenger in charge from Altus to Sweetwater, Texas even attempted to take pieces of ice from the water cooler and place it around their crates in an effort to relieve them. This occurred, according to his statement, in the late afternoon and he did not take over the chinchillas until after three o'clock, p. m. Consequently, this must have occurred shortly after he boarded the train and the jury might properly infer that no ice was placed on the car at the Altus stop. The balance of the chinchillas were taken off at Sweetwater, Texas, put in an air conditioned room, recovered, and shipped to San Angelo, Texas.

In the Grosjean case, supra, the court held:

"Where all the evidence on the subject is to the effect that there was no negligence, fault or breach of contractual duty on the part of the carrier in transporting a shipment of livestock, the bare fact that the livestock were afflicted with a disease upon arrival at their destination is insufficient to fix responsibility therefor on the carrier."

That just conclusion of such remarks of the Court is that if there was negligence on part of the carrier that they are responsible.

Even though the natural propensity of the animal may have been such as that normally defendant would not be liable, after they were once advised of the means to be taken to insure safe arrival, and after they initiated such means, if they did not continue with it, it may well constitute negligence.

In the case of Dailey v. Chicago, St. P. M. & O. R. Co., 194 N. W. 676, it was held:

"A railroad company is not generally held liable for injuries to live stock due to a condition of pregnancy unless it has actual or constructive knowledge of this fact. In the absence of such knowledge the condition will be regarded as a hidden or concealed defect, and the company will not be charged with greater care than that ordinarily exercised in handling animals not pregnant. But where the fact that the animal is in a pregnant condition is plainly apparent to the railroad company, or where it is in possession of facts that would lead a reasonable person to infer this condition, then the company will be liable for injuries due thereto, and caused by its negligence in not handling the animal with due care under the circumstances, though not expressly informed of the fact by the shipper."

also see: Estill v. New York, L. E. & W. R. Co., 41 Fed. 849; Gulf, W. T. & P. Ry. Co. v. Staton, 49 S. W. 277; New York & Railroad Co. v. Estill, 147 U. S. 591.

In applying these rules, as set forth, the jury was charged that defendant could not be liable for the damage to the three chinchillas that died prior to arrival in Kansas City as defendant had shown that that was due to the inherent defect in the animal and that counterbalanced the presumption made by plaintiff's prima facie case. However, the court did charge the jury in accordance with the foregoing cases that once having found the propensity of the animal, and having been advised of the necessary shipping precautions and having initiated the necessary safeguards the jury could find them negligent in not continuing such safeguards, if a reasonable person under the same facts and circumstances would have continued such safeguards.

The jury evidently found such negligence as this was the only issue of negligence submitted to them. The court believes that the foregoing cases sufficiently sustain, as a matter of law, the finding of the jury.

We come now to the element of damages. Plaintiff testified as to the value of the chinchillas and testified as to the price per pair, which he had sold under contract to San Angelo, Texas. Two other breeders and one former breeder of chinchillas testified as to the reasonable value of these animals. The testimony further indicated that there was only a general market as against local markets, in that the value of chinchillas at the present time is for breeding purposes; that sales are made from time to time, but that there is not a usual type market as we associate the term. The total value of the chinchillas shipped was somewhere in the neighborhood of $8500.00. There was no testimony as to which chinchillas survived or which died, and the court charged the jury that they must presume that the most valuable chinchillas survived, or died between St. Louis and Kansas City, on which there could be no liability on the part of the defendant.

The valuation on the remaining chinchillas was $4335.00, which was the amount of the verdict the jury returned in favor of the plaintiff.

Defendant contends that plaintiff, a breeder of chinchillas, and other breeders should not have been permitted to testify as to their value, but

that some other "expert" testimony should be used. The court is unable to determine what more expert testimony can be had but that of the breeders and raisers who have all made sales.

It is claimed that these chinchillas had no value at death, and this was not disputed by defendant. There was no showing of a market price at the point of destination, other than the general market price of the chinchillas. In the case of **Strickler v. The Baltimore & Ohio Rd. Co., 165 Oh St 523**, the court cited the general rule that the carrier is not chargeable with or liable for special damages resulting from delay in transportation or delivery of goods entrusted to it for shipment, unless notice of the special circumstances rendering prompt delivery and transportation is given.

Generally, the market value at the place of arrival is the determining valuation. However, if there is no market value at the place of destination, the closest market is that controlling. However, if the market price cannot be determined at the point of destination, it can be determined that the shipping point is the nearest place of the market. Wood v. Chicago, M. & St. P. Ry. Co., 151 N. E. 229.

In this case the evidence was that there was not a local market, but a general market throughout the country, and that the price at any given place would probably be the same.

In 9 A. J. §783, P. 907, it is stated:

"The contract price, rather than the market value of goods may constitute the proper basis for estimating the damages * * * the right to recover on the basis of the contract price, where such price exceeds the market value, is subject to the condition that the carrier had notice * * * although some courts have stated the rule without referring to such condition. **Where the contract price is the only evidence of the market value, it should be taken as the measure of damages.**"

Also see: 13 C. J. S., §264 e., P. 615.

No decisions have been reached in Ohio as to whether the contract price shall be used if it exceeds the market price. However, in this case, there is no evidence of any market other than the general market. There is the general market value and there was a contract price, which is consistent with the general market value. No evidence was offered against these valuations in any form by defendant. Consequently, the contract price in this case may be regarded as the market price.

In addition, defendant contends that liability for shipment was limited to five thousand dollars and that the verdict should be pro-rated and could not be more than the amount surviving would be to the total value. The court charged the jury that they could find the amount of loss of plaintiff not to exceed five thousand dollars. Where a price per pound, per hundred weight, or per animal is stated, generally a pro-ration takes place and recovery is limited to so much per pound or per animal. 13 C. J. S. §113, P. 221.

However, in this case there is no stipulated price per unit, but only the total valuation and in such case the rule is different.

"The rule entertained by the weight of authority is that where the contract of carriage provides that the amount recoverable in case of loss

or damage shall be limited to the declared value of the shipment, such agreement in case of partial loss, is to be construed as permitting recovery for the loss or damage actually sustained, the amount recoverable, however, not to be greater than that agreed on as compensation for a total loss; and it necessarily follows that where this rule obtains the shipper is not limited to a recovery of such proportion of the amount named in the contract as the value of the property destroyed bore to the value of all the property shipped."

13 C. J. S. §113, P. 223. The note cities decisions of California, Illinois, Indiana, Iowa, Missouri, New Jersey, New York, Ohio, Pennsylvania, Texas and Virginia. The Note in 10 C. J., P. 185, cites similar decisions from Tennessee, Alabama, Montana, Indiana, and South Carolina.

In Ohio, there is only one case that has been decided, that a Municipal Court case in which the same rule was announced. Blum v. C. C. C. & St. L. Ry. Co., 25 O. N. P. ns 112. Also see: Spaner Bros., v. Central Canada Exp. Co (Alberta), 23 C 43 D L R 400, 23 Can. Ry. Cas. 332.

This doctrine is well set forth in the case of Candee v. Delaware L. & W. R. Co., 109 Atl. 202, certiorari denied, 253 U. S. 490, 40 Sup. Ct. Rep. 584.

"* * * a shipment of goods * * * and of a value not exceeding $1200 as 'stated for the purpose of enabling the carrier to apply the proper published rate,' * * * in case of loss or damage and no statement as to any ratio of recovery in case of partial loss or damage the amount of the shipper's recovery depends upon proof of his actual loss or damage within the limits of the declared value of the entire shipment, and not upon the ratio the weight of the articles, destroyed or damaged, bore to the entire shipment."

The same effect is found in the case of Chanango Textile Corp. v. Willock, 288 N. Y. Supp. 270.

"we are of the opinion that in the case before us the plain language of the agreement to the effect that the declared value of the shipment shall establish the limit of the carrier's liability should not be interpreted to mean that in the event of partial damage recovery is to be that proportion of the actual loss which the declared value bears to the actual value. If the carrier had intended to bind the shipper to such provisions, it was incumbent upon the carrier to so state in plain and unambiguous language."

This Court certainly concurs in this view as the contract was made up, printed, prepared and filled in by the carrier, and if he had so desired to limit himself, he certainly could have so stated.

For these reasons the motion for new trial of the defendant should be, and hereby is overruled.

Entry has been entered in accordance herewith this date.